**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **JULIET HOMES, LP,** | § | **Case No. 07-36424-H1-7** |
| | § | **(Chapter 7)** |
| **Debtor** | § | |
| _____ | § | |
| | § | |
| IN RE: | § | |
| | § | |
| **JULIET GP, LLC,** | § | **Case No. 07-36426-H1-7** |
| | § | **(Chapter 7)** |
| **Debtor** | § | |
| _____ | § | |
| | § | |
| IN RE: | § | |
| | § | |
| **DOUGLAS A. BROWN,** | § | **Case No. 07-36422-H1-7** |
| | § | **(Chapter 7)** |
| **Debtor** | § | |
| _____ | § | |

**TRUSTEES' FOURTH MOTION FOR APPROVAL OF COMPROMISE**
**AND SETTLEMENT AGREEMENTS BETWEEN**
**TRUSTEES AND MULTIPLE DEFENDANTS**

**NOTICE PURSUANT TO LOCAL BANKRUPTCY RULE 9013(b)**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

COME NOW Joseph M. Hill, Trustee ("Juliet Trustee") of the bankruptcy estates of Juliet Homes, LP and Juliet GP, LLC ("Juliet Debtors" or "Juliet") and Janet S. Northrup, Trustee as Successor Trustee ("Brown Trustee") of the bankruptcy estate of Douglas A. Brown ("Brown"), seeking approval to compromise and settle various causes of action and claims with Defendants (i) David Greenberg and Greenberg & Co., (ii) Muduganti J. Reddy, (iii) Richard Robert, (iv) Vincent Galeoto and Janvin Corp., (v) Thai Nguyen, (vi) Mir Azizi, (vii) Shreyaskumar Patel, (viii) Michael Ecklund, James Crable, Marquis Capital II Westcott, LP d/b/a/ Marquis Capital II, LLC and William Marsh Resco I, LP, (ix) Washington Ho, Binh Ho and Hue Ho, (x) Malladi Reddy, (xi) Warren King, (xii) Joanna Gober, (xiii) Edward O'Hair and Ashley O'Hair,   (xiv) Carolee Taylor and Eric Putnam, (xv) Melissa Thomas, (xvi) Ray Lindgren, and (xvii) Anthony Fitzpatrick  (collectively, the "Settling Defendants"), showing as follows:

## I.  RELIEF REQUESTED

1.       Pursuant to Federal Rule of Bankruptcy Procedure 9019, the Juliet Trustee and Brown Trustee (collectively, "Trustees") request approval of their settlements and compromises of controversy with the Settling Defendants.   While the Settling Defendants have agreed to the proposed compromises, the factual recitations set forth herein are solely those of the Trustees and are not necessarily agreed to by the Settling Defendants.

## II.  PROCEDURAL BACKGROUND

2.       On September 20, 2007, an involuntary petition for relief was filed under Chapter 7 of the United States Bankruptcy Code against each of the Juliet Debtors.   On the same date, an

- 2 -

involuntary petition for relief was filed under Chapter 7 of the United States Bankruptcy Code against Brown.

3.       On October 19, 2007, the Juliet Debtors and Brown consented to the entry of an order for relief and converted their cases to Chapter 11.  On October 31, 2007, the Bankruptcy Court entered Orders for Relief in the Juliet Debtors' and Brown's bankruptcy cases (together, the "Bankruptcy Cases").

4.       The Juliet Trustee was subsequently appointed as Chapter 11 Trustee.  At the request of the Juliet Trustee, the Juliet Debtors' cases were converted to Chapter 7 cases.

5.       On December 5, 2007, Brown moved to convert his case to Chapter 7, and on December 19, 2007, the Bankruptcy Court converted Brown's case to Chapter 7.  Thereafter, the Brown Trustee was appointed Successor Trustee of Brown's Chapter 7 estate.

6.       Trustees commenced multiple Adversary Proceedings based on allegations that the Juliet Debtors and Brown were engaged in a Ponzi scheme in which certain investors and/or partners received funds that Trustees are entitled to recover pursuant to federal and state law. These Adversary Proceedings include:

- Adv. No. 09-3429, Joseph M. Hill, Trustee et al. v. Alex Oria, et al.
- Adv. No. 09-3432, W. Steve Smith, Trustee et al. v. Douglas Allen Brown, et al.
- Adv. No. 09-3433, W. Steve Smith, Trustee et al. v. Douglas Allen Brown, et al.
- Adv. No. 09-3434, W. Steve Smith, Trustee et al. v. Douglas Allen Brown, et al.
- Adv. No. 09-3435, W. Steve Smith, Trustee et al. v. Eric Putnam, et al.
- Adv. No. 09-3436, W. Steve Smith, Trustee et al. v. Eric Putnam, et al.
- Adv. No. 09-3437, W. Steve Smith, Trustee et al. v. Eric Putnam, et al.
- Adv. No. 09-3438, W. Steve Smith, Trustee v. Lawrence H. Ramming, et al.
- Adv. No. 09-3439, W. Steve Smith, Trustee v. Lawrence H. Ramming, et al.
- Adv. No. 09-3440, W. Steve Smith, Trustee v. Lawrence H. Ramming, et al.
- Adv. No. 09-3441, Joseph M. Hill, Trustee et al. v. Alex Oria, et al.
- Adv. No. 09-3442, Joseph M. Hill, Trustee et al. v. Alex Oria, et al.
- Adv. No. 09-3443, Joseph M. Hill, Trustee et al. v. Alex Oria, et al.

HOULITIGATION:1381336.2

- Civil Action No. H-12-840, Joseph M. Hill, Trustee, et al. v. Alex Oria, et al.[1]

(collectively, the "Adversary Proceedings").  The Adversary Proceedings were consolidated and the reference of them withdrawn to the U.S. District Court, thereby initiating Civil Action No. H-12-840, *Joseph M. Hill, Trustee, et al. v. Alex Oria, et al.*, which is pending before the Honorable Sim Lake.  Reference to the "Adversary Proceedings" in this Motion includes Civil Action No. H-12-840 wherever the context requires.

7.     The proposed settlements are discussed below.

### III.  PROPOSED SETTLEMENTS

**1.     David Greenberg and Greenberg & Co.**

8.     Trustees sued David Greenberg and Greenberg & Co. (collectively, the "Greenberg Defendants") for allegedly receiving multiple transfers totaling in excess of $6.8 million from Debtors as identified in Trustees' Second Amended Complaint.  These transfers were characterized in Debtors' books and records as loan payments, payments for consulting, rent payments, and payments related to Debtors' purchase and/or sale of real estate. The Greenberg Defendants vigorously disputed Trustees' characterization of the transfers as preferences and fraudulent and denied receipt of transfers in the amounts listed in the complaint, asserting that some identified transfers were either not made or returned for insufficient funds. Unlike other defendants who were investors in Debtors' real estate programs (and who received transfers that Trustees sought to avoid as part of the defendants' participation in a Ponzi scheme), the Greenberg Defendants defended Trustees' claims by asserting that they were bona fide

---

[1] Adv. Nos. 09-3429, 09-3432, 09-3433, 09-3434, 09-3435, 09-3436, 09-3437, 09-3438, 09-3439, 09-3440, 09-3441, and 09-3442 were consolidated into Adv. No. 09-3429.  On March 12, 2012, Bankruptcy Judge Marvin Isgur stated his intent to recommend that the reference from the District Court be withdrawn in Adv. No. 09-3429.  Judge Isgur issued his certification to the District Court on January 28, 2014.  Civil Action No. H-12-840 is the District Court suit that resulted from the withdrawal of the reference.

lenders to the Debtors who received loan payments, consulting payments, and payments related to real estate sales.

9.      Following protracted litigation with the Greenberg Defendants, including a multi-day hearing on their Motion to Dismiss and numerous depositions, the Greenberg Defendants and the Trustees began informal settlement negotiations at the end of 2013.  These negotiations were not successful, and the parties were unable to resume settlement discussions.  In May 2014, having been ordered to mediation with the Trustees, the Greenberg Defendants resumed negotiations with Trustees and agreed to a settlement by which the Greenberg Defendants would (i) pay Trustees $350,000, (ii) waive eight proofs of claim totaling more than $7.9 million filed by related Greenberg entities in the Debtors' bankruptcy cases, and (iii) release Trustees and the estate of their counterclaims.   The terms of the settlement are set forth more fully in the settlement agreement attached **Exhibit 1** and incorporated by reference as if fully set forth herein.

10.     Trustees seek approval of their compromise with the Greenberg Defendants as fair and equitable to the estates and their creditors and pursuant to the factors set forth in *Protective Committee For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968) is as follows:

(a)     <u>Probability of success in litigation, with consideration given to the uncertainty in fact and in law.</u>  While Trustees believe that they have asserted valid claims against the Greenberg Defendants, the claims are different from those involving other defendants who were indisputably investors in the Debtors' real estate program (which Trustees allege was a Ponzi scheme).  Trustees recognize that proving the elements of their claims against the Greenberg Defendants will likely be more difficult without the presumptions that Trustees believe that they

- 5 -

are entitled to based upon their allegations of a Ponzi scheme.  The issues relating to the Debtors'

repayment of apparent "loans" to the Greenberg Defendants and whether such loan payments are

avoidable as fraudulent transfers are uncertain in both fact and law.

       (b)    <u>Complexity, expense and likely duration of litigation.</u>  The Greenberg Defendants

have vigorously defended against Trustees' claims from the inception of the Adversary

Proceedings, filing multiple motions to dismiss that required days of evidentiary hearings and

briefing.  The Greenberg Defendants also made a jury demand and successfully sought and

obtained a withdrawal of the reference of the Adversary Proceedings to the U.S. District Court.

If not for the settlement with the Greenberg Defendants, this litigation would no doubt require

more than four weeks of a jury trial and hundreds of hours of preparation as well as attendant

expense for briefing, expert preparation and testimony, and related trial expenses.  Following the

withdrawal of the reference and this Court's certification of the case as ready for trial, U.S.

District Judge Sim Lake conducted a scheduling conference and ordered the parties to mediation.

Because of the mediation scheduling, Judge Lake has not yet set the case on a schedule for trial.

Resolution of the dispute with the Greenberg Defendants, if not for the settlement, would likely

not occur until some time in 2015 and then possibly be subject to appeals following that.  The

settlement with the Greenberg Defendants expedites the resolution of the biggest claim in the

Adversary Proceedings and avoids the expenditure of limited estate resources for trial expenses.

       (c)    <u>Other factors relevant to a full and fair assessment of the wisdom of the proposed</u>

<u>compromise.</u>  The settlement with the Greenberg Defendants avoids potential liability to the

estates with the release of their counterclaims.  Further, the Greenberg Defendants are also

delivering the waiver of eight proofs of claim totaling almost $8 million filed by related

Greenberg entities.  The waiver of these claims significantly reduces the pool of unsecured

- 6 -

creditors who will share in distribution from the estates, providing direct value to the holders of other allowed unsecured claims.  While claimant 5803 Richmond, Ltd. is waiving its claims filed in the Juliet Homes and Douglas A. Brown bankruptcy cases such that 5803 Richmond, Ltd. shall not share in any distribution from those estates, 5803 Richmond, Ltd. is not waiving its claim against Douglas A. Brown, whose discharge from bankruptcy was denied.

**2.      Muduganti J. Reddy (also known as M.J. Reddy)**

11.     Trustees sued M.J. Reddy for allegedly receiving multiple transfers totaling in excess of $1.5 million from Debtors as identified in Trustees' Second Amended Complaint. These transfers were characterized in Debtors' books and records primarily as partnership distributions and buyout payments related to various investments in Juliet Homes joint ventures and partnerships.  M.J. Reddy was the identified agent for various investors in the Juliet Homes program, including Shreyaskumar Patel, Ravi Reddy, Bhagvan Malladi and Malladi Reddy, who authorized Juliet Homes to make payments due to them to M.J. Reddy.  According to Trustees' discovery and information obtained from various sources, M.J. Reddy received several payments for the benefit of those investors and retained portions of the payments as compensation.  For example, Trustees' complaint identifies $755,000 in buyout payments related to the Juliet-Beverly Hills/Center Street project, $680,000 of which M.J. Reddy alleges were paid to investors in that partnership for whom he acted as agent.

12.     M.J. Reddy also lent money to Juliet Homes and received repayment of some of the loans through closings of Juliet Homes properties.  M.J. Reddy filed a proof of claim alleging that his $600,000 loan to Juliet Homes was unpaid.

13.     M.J. Reddy claims to have lost vastly more money in his transactions with Juliet Homes than he received in return.  He vigorously disputed Trustees' characterization of the

- 7 -

transfers as transfers to him and for his benefit, and he also denied receipt of some of the transfers identified in the complaint.  M.J. Reddy also defended Trustees' claims by asserting that he was a bona fide lender to the Debtors who received loan payments, consulting payments, and payments related to real estate sales.

14.     Following protracted negotiations with M.J. Reddy, Trustees agreed to a settlement by which M.J. Reddy would (i) pay Trustees $95,000, (ii) waive his proof of claim in the amount of $600,000 for money purportedly loaned to the Debtors, and (iii) release Trustees and the estate of his counterclaim and all other claims against the estate.  The terms of the settlement are set forth more fully in the settlement agreement attached **Exhibit 2** and incorporated by reference as if fully set forth herein.

15.     Trustees seek approval of their compromise with the Greenberg Defendants as fair and equitable to the estates and their creditors and pursuant to the factors set forth in *Protective Committee For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968) is as follows:

(a)     <u>Probability of success in litigation, with consideration given to the uncertainty in fact and in law.</u>  While Trustees believe that they have asserted valid claims against the M.J. Reddy, the claims are different from those involving other defendants who were indisputably direct investors in the Debtors' real estate program.  To the extent that M.J. Reddy is not viewed as an "investor in a Ponzi scheme," Trustees recognize that proving the elements of their claims against him will likely be more difficult without the presumptions that Trustees believe that they are entitled to based upon their allegations of a Ponzi scheme.  The issues relating to the Debtors' repayment of apparent "loans" from M.J. Reddy and whether such loan payments are avoidable as fraudulent transfers are uncertain in both fact and law.

- 8 -

(b)     <u>Complexity, expense and likely duration of litigation.</u>  M.J. Reddy has vigorously defended against Trustees' claims from the inception of the Adversary Proceedings, filing a motion to dismiss, a jury demand, and a counterclaim.   The settlement with M.J. Reddy significantly reduces the amount of time needed for the trial of the Trustees' claims the number of hours of preparation as well as attendant expense for briefing, expert preparation and testimony, and related trial expenses.  As stated above, U.S. District Judge Sim Lake has not yet set the case on a schedule for trial.    The settlement with M.J. Reddy expedites the resolution of one of the biggest claim in the Adversary Proceedings and avoids the expenditure of limited estate resources for trial expenses.

(c)     <u>Other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.</u>  The settlement with M.J. Reddy avoids potential liability to the estates with the release of his counterclaim.  Further, M.J. Reddy is also releasing his $600,000 proof of claim and section 502(d) claim against the estate, which significantly reduces the claims against the estates and the pool of unsecured creditors who will share in distribution, providing direct value to the holders of other allowed unsecured claims.   The settlement also avoids collection difficulties and uncertainty.

**3.     Richard Robert**

16.     Richard Robert was an investor who invested $400,000 in one of the early Juliet Homes residential projects called Ballpark III.   Unlike many of the Juliet Homes residential projects, the Ballpark III project involved townhomes that were constructed and sold.   Robert received $400,000 as the return of his capital plus an additional $350,000 as his "profits" interest in the venture.   Robert subsequently made a short-term secured $400,000 loan to Juliet Homes and simultaneously entered into a consulting agreement that provided for payments to Robert.

- 9 -

The $400,000 note was paid by a third party.  Trustees sued to recover the transfers made on account of Robert's interest in Ballpark III as well as $10,000 in consulting payments.

17.     Robert vigorously disputed that the Ballpark III payments were avoidable transfers in light of the profitable nature of the Ballpark III project, Robert's alleged lack of knowledge that Juliet Homes was part of a Ponzi scheme, and the allegation that Juliet Homes was not insolvent at the time that Robert received his payments.  Robert asserted a counterclaim against Trustees for his attorneys' fees.

18.     Robert and Trustees agreed to a settlement wherein Robert would pay $80,000.00, and the parties would mutually dismiss their claims.  A copy of the settlement agreement with Robert is attached as **Exhibit 3** and incorporated by reference as if fully set forth herein.

19.     Analysis of the factors under *Protective Committee For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968) is as follows:

(a)     <u>Probability of success in litigation, with consideration given to the uncertainty in fact and in law.</u>  While Trustees are confident in their chances of success should these claims proceed to trial, the certainty of an $80,000 recovery from Robert at this time rather than after a protracted trial and possible appeal mitigated in favor of settlement.   The settlement amount is approximately 25% of the total amount of Robert's net profit on Ballpark III.

(b)     <u>Complexity, expense and likely duration of litigation.</u>  As explained above with regard to the settlement with the Greenberg Defendants, the duration of this litigation if it proceeds to trial is long both as to time to try the case and when the case would be reached for trial.  The settlement of Trustees' claims against Robert spares the estates significant trial time, delay in resolution, and expense.

- 10 -

(c)      Other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.  Robert is waiving his claim under section 502(d) as well as his counterclaim against the Trustees.

**4.      Vincent Galeoto and Janvin Corp.**

20.      Vincent Galeoto invested $162,500 in Juliet Homes' Ballpark V  project through his company, Janvin Corp.  Under the joint venture agreement, Janvin was entitled to receive a profits payment upon the sale of homes in the project, but no homes were constructed. Nevertheless, Janvin received the return of his investment plus an additional $162,500 as part of a buyout agreement with Juliet Homes.  Following that, Galeoto lent Juliet Homes $250,000 but never received payment.  Galeoto timely filed a proof of claim for that debt.

21.      Galeoto vigorously denied liability to the Trustees, who sued to recover the Ballpark V transfers.  Galeoto argued that he was a "net loser" because the $162,500 in "profits" from Ballpark V was more than offset by the $250,000 loss he suffered because of Juliet Homes' default in paying back the loan.

22.      Trustees and Galeoto and Janvin agreed to a settlement under which Galeoto would pay $40,000 in satisfaction of Trustees' claims plus waive his $250,000 proof of claim. A copy of the settlement agreement with Galeoto and Janvin is attached as **Exhibit 4** and incorporated by reference as if fully set forth herein.

23.      Analysis of the factors under *Protective Committee For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968) is as follows:

(a)      Probability of success in litigation, with consideration given to the uncertainty in fact and in law.  Trustees are confident in their claims, and Galeoto is also confident in his defenses.  The claims against Galeoto are complicated by Galeoto's assertion that he is a "net

- 11 -

loser" because of the unpaid $250,000 that he lent to Juliet Homes.  While Trustees believe that the law supports their position that a Ponzi scheme investor may not setoff losses from a loan against gains from an investment with the Ponzi perpetrator, there is no controlling law in this Circuit and the analysis is fact-intensive.

(b)     <u>Complexity, expense and likely duration of litigation.</u>  As with the Greenberg Defendants and Robert settlements described above, Trustees' resolution of their claims against Galeoto spares the estates significant trial expense and expedites the resolution of the Adversary Proceedings. The settlement will also conserve judicial resources.

(c)     <u>Other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.</u>  Trustees have concluded that this settlement, which recovers approximately 25% of the $162,500 in "profits" paid to Galeoto plus decreases the claims against the Juliet Homes estate by $250,000 through the release of Galeoto's proof of claim and the additional release of his section 502(d) claim is of benefit to the estates and will allow Trustees to concentrate their efforts on the prosecution of claims against other Defendants and conserve resources.

**5.     Thai Nguyen**

24.     Thai Nguyen was an investor who invested $250,000 in a Juliet Homes entity called "Juliet-Nguyen, L.P." that did not specify a particular real estate project related to the investment but that promised a $125,000 return on Nguyen's investment.  Nguyen also claims to have lent Juliet Homes $225,000, which was documented by a promissory note in the amount of $600,000 (purportedly covering the initial $250,000 investment, the $125,000 promised "profit," and the additional $225,000 loan.  Nguyen received payments of $260,000 from a closing involving the sale of property belonging to a non-debtor company in which Doug Brown was an owner as well as other transfers identified in the Trustees' complaint of approximately $90,000.

- 12 -

Like Galeoto (described above), Nguyen defended Trustees' claims by claiming that he was a "net loser" entitled to offset any transfers against his losses.

25.     Trustees and Nguyen agreed to settle Trustees' claims for a payment of $40,000 and execution of mutual releases. A copy of the settlement agreement with Nguyen is attached as **Exhibit 5** and incorporated by reference as if fully set forth herein.

26.     Factors under *Protective Committee For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968):

(a)     <u>Probability of success in litigation, with consideration given to the uncertainty in fact and in law.</u>  As with Galeoto, the issue of whether Nguyen could offset losses against profits is unclear.  Further, whether the $260,000 payment from the Doug Brown affiliate is avoidable as a transfer is questionable and a fact-intensive matter.

(b)     <u>Complexity, expense and likely duration of litigation.</u>  As stated above, the Adversary Proceedings involve numerous defendants and numerous transactions and will require significant time and expense to resolve.  Settlement of Trustees' claims against Nguyen reduces the expense and time required for resolution of the Adversary Proceedings and provides a certain result beneficial to the estates.  The settlement will also conserve judicial resources.

(c)     <u>Other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.</u>  Trustees' settlement with Nguyen provides an expeditious resolution of their claims and reduces the time and expense involved with the resolution of the unsettled claims. Nguyen is also providing a complete release of all claims against the estates.

## 6.     Mir Azizi

27.     Mir Azizi was not an investor in the Juliet Homes real estate projects but, rather, a co-owner of property in downtown Houston who financed the purchase that property by Bentley

- 13 -

Capital, a Doug Brown entity.  Trustees sued to recover payments made by Juliet Homes on account of Bentley Capital's obligation.

28.     Azizi disputed any liability to Trustees, asserting that the approximately $60,000 in transfers were for value to the Debtors.

29.     Trustees and Azizi agreed to settle Trustees' claims through Azizi's payment of $15,000 and Azizi's release of all claims.  A copy of the settlement agreement with Azizi is attached as **Exhibit 6** and incorporated by reference as if fully set forth herein.

30.     Analysis of the factors under *Protective Committee For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968) is as follows::

(a)     <u>Probability of success in litigation, with consideration given to the uncertainty in fact and in law.</u>  The legal and factual issues related to Trustees' claims against Azizi turn on whether Juliet Homes' payments to Azizi were fraudulent conveyances because they were paid on obligations of Bentley Capital, a company owned by Doug Brown.  Whether Doug Brown, Juliet Homes, and Bentley Capital were essentially one and the same would require extensive evidentiary presentation to recover the approximately $60,000 in transfers made to Azizi.  Trial would be expensive and prolonged with little certainty about how a jury would resolve the fact issues.

(b)     <u>Complexity, expense and likely duration of litigation.</u>  Settlement of Trustees' claims against Azizi avoids the complexity of the issues concerning Bentley Capital, provides for an expeditious and efficient resolution of Trustees' claim, and frees up resources for continued litigation against the other Defendants.  The settlement will also conserve judicial resources.

(c)     <u>Other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.</u>  Trustees have concluded that this resolution of their claims against Azizi is in the

- 14 -

best interests of the estate given the uncertainty about the outcome, the size of the claim and the resources that would be required to litigate it. Azizi is also providing a release of all claims against the estates.

**7.      Shreyaskumar Patel**

31.     Shreyaskumar Patel and another investor, Ravi Reddy, invested in a Juliet Homes project named Juliet-Reddy (but commonly known as Chateaux on Richmond) through their business partner, M.J. Reddy, who was to receive an interest in the project without making a cash investment. Patel provided $200,000 in capital and Ravi Reddy invested another $200,000, and they were listed as joint venture partners. Juliet Homes later entered into a buyout agreement by which it agreed to pay $750,000 for Patel's and Ravi Reddy's interests, with payments to be made to M.J. Reddy for their benefit. Significant factual disputes exist concerning the amount of money paid to M.J. Reddy, whether transfers to him were on account of Patel's interest, whether Patel received the money, and whether Patel made any "profit" on his investment. Juliet Homes' records concerning these transactions are inconclusive.

32.     Patel has asserted that he is a "net loser" and has no liability to the Trustees on account of transfers made to M.J. Reddy. Based upon the foregoing and other information, the parties agreed to settle for $20,000 and mutual dismissals. A copy of the settlement agreement with Patel is attached as **Exhibit 7** and incorporated by reference as if fully set forth herein.

33.     Factors under *Protective Committee For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968):

(a)      <u>Probability of success in litigation, with consideration given to the uncertainty in fact and in law.</u> Although Trustees believe that their claims against Patel are meritorious, the state of Juliet Homes' records and the conflicting information from Patel and M.J. Reddy make

- 15 -

successful prosecution of the claims uncertain.  There is genuine dispute regarding the amounts paid to Patel.

(b)      Complexity, expense and likely duration of litigation.  As set forth above, the Adversary Proceedings are complex, will be expensive to litigate with multiple defendants whose fact situations and legal issues could support stand-alone trials, and will likely not get reached for trial until 2015.

(c)      Other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.  Given the factual disputes about payments to Patel and the state of the Debtors' records on this critical issue, Trustees concluded that settlement was beneficial to the estates. Patel is also providing a complete release of claims against the estates.

## 8.    Michael Ecklund, James Crable, and the Marquis entities

34.      Michael Ecklund and James Crable were purchasers of a Juliet Homes townhome that they leased back to Juliet Homes for use as a model home.  Juliet Homes paid a monthly rental that covered Ecklund and Crable's mortgage payments.  Upon the sale of the townhome, Juliet Homes contributed some $23,000 toward the closing, and Ecklund and Crable received sale proceeds of slightly more than $7,000.

35.      The Trustees also alleged that Ecklund was involved in investments in Juliet Homes through three companies named Marquis Capital II Westcott, LP d/b/a Marquis Capital; Marquis Capital II, LLC; and William Marsh Resco I, LP.   Trustees' complaint alleged that each of Ecklund and Crable received avoidable transfers totaling $13,471.44 in lease payments and that the Marquis entities received transfers totaling $388,406 for partnership distributions and return of capital invested.

- 16 -

36.     Ecklund and Crable filed a motion for summary judgment in which they established that Ecklund had no personal liability for $125,000 of transfers alleged to have been made to Marquis.   Although other claims against Ecklund, Crable and the Marquis entities survived the motion for summary judgment, Ecklund informed Trustees that the Marquis entities were long defunct and dissolved and therefore judgment-proof.   At mediation, the parties focused on the Trustees' claims related to Ecklund and Crable's purchase, lease, and sale of the townhome.   After protracted negotiations, in which Ecklund and Crable argued that the lease payments were "for fair value" and that other amounts paid at closing were consistent with Juliet Homes' agreement with them, Ecklund and Crable agreed to settle for a combined $7,750 and a release of their claims against the Trustees and the estates.   Copies of the settlement agreements with Ecklund/Marquis and Crable are attached as **Exhibits 8-A and 8-B.**

37.     Factors under *Protective Committee For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968):

(a)     <u>Probability of success in litigation, with consideration given to the uncertainty in fact and in law.</u>  Although Trustees believe that their claims against Ecklund/Marquis and Crable are meritorious, the defunct status of the Marquis entities and the information from Ecklund and Crable regarding the terms of their lease with Juliet Homes make successful and productive prosecution of the claims problematic.

(b)     <u>Complexity, expense and likely duration of litigation.</u>   As set forth above, the Adversary Proceedings are complex, will be expensive to litigate with multiple defendants whose fact situations and legal issues could support stand-alone trials, and will likely not get reached for trial until 2015.

(c)      <u>Other factors relevant to a full and fair assessment of the wisdom of the proposed</u>
<u>compromise.</u>  Given the factual disputes about the terms of the lease and closing cost payments
to Ecklund and Crable, the poor state of the Debtors' records on this critical issue, and the
amount at issue, Trustees concluded that settlement was beneficial to the estates.

**9.      Washington Ho, Binh Ho and Hue Ho**

38.      Trustees alleged in their complaint that Washington Ho received transfers totaling
$157,934 from the Debtors.  Because Ho did not answer Trustees' complaint, Trustees obtained
a final default judgment in the principal amount of $157,934 against Ho in 2014.  Ho timely filed
a motion to vacate the default judgment, alleging that he had never been served and that he had a
good faith defense based on providing value to the Debtors in the form of referring his family
members as investors and providing loans of more than $80,000 to Juliet Homes through the use
of his credit card.

39.      If Ho prevailed in establishing that he was not timely served with Trustees'
complaint, Trustees' judgment against Ho would have been vacated and their claims against Ho
dismissed as untimely.  In light of the risks of litigation for both Trustees and Ho, the parties
agreed to a settlement by which Ho agreed to pay $40,000 and Trustees agreed to vacate the
default judgment.  The settlement agreement with Washington Ho is attached as **Exhibit 9-A.**

40.      Binh Ho and Hue Ho are Washington Ho's parents.  From Juliet's records, it
appeared that Binh Ho received $800,000.  He actually invested $800,000, and that amount was
subsequently transferred and Binh Ho did not receive a return of his capital or other distributions.
It also appeared from the records that Hue Ho received $80,000, but discovery showed that Juliet
wrote an $80,000 check to her but that the check was dishonored and returned NSF.  Therefore,

- 18 -

the Trustees settled with Binh and Washington for a dismissal along with their agreement to testify.  The settlement agreement with Binh and Hue Ho is attached as **Exhibit 9-B.**

41.     Factors under *Protective Committee For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968):

(a)     <u>Probability of success in litigation, with consideration given to the uncertainty in fact and in law.</u>  Although Trustees believe that their claims against Washington Ho are meritorious and that the default judgment was properly entered, issues related to whether Ho received his transfers in exchange for value presented the possibility that Ho could both obtain a vacation of the default judgment and avoid liability for the transfers.   As to Binh and Hue Ho, Trustees concluded that what appeared to be transfers to them were not supported by the evidence, thereby justifying the settlement by which Binh and Hue Ho receive a dismissal of the claims against them.

(b)     <u>Complexity, expense and likely duration of litigation.</u>  As set forth above, the Adversary Proceedings are complex, will be expensive to litigate with multiple defendants whose fact situations and legal issues could support stand-alone trials, and will likely not get reached for trial until 2015.

(c)     <u>Other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.</u>  Given the factual disputes about whether Washington Ho was served with process, and the possible loss of Trustees' claims against him, Trustees concluded that settlement was beneficial to the estates.  Additionally, Binh Ho is releasing his proof of claim for $800,000, and Binh and Hue Ho are releasing their proof of claim for $1,050,225.61.

- 19 -

10.     **Malladi Reddy**

42.     Trustees sued Dr. Malladi Reddy to recover $300,000 paid to his agent, M.J. Reddy, for a buyout of Malladi Reddy's $200,000 investment in Juliet-Silverwood.   The $300,000 was paid to M.J. Reddy out of sales of Silverwood lots, and M.J. Reddy in turn purportedly delivered $248,000 to Malladi Reddy and retained the $52,000 balance.

43.     Malladi Reddy has asserted that he is a net loser because of his investment of $650,000 in another project, 6906 Broadway, involving Doug Brown's entity Bentley Capital. Based upon the foregoing and other information concerning whether the payments made to M.J. Reddy were transfers to Malladi Reddy, the parties agreed to settle for $20,000 and mutual dismissals.   A copy of the settlement agreement with Malladi Reddy is attached as **Exhibit 10** and incorporated by reference as if fully set forth herein.

44.     Factors under *Protective Committee For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968):

(a)     <u>Probability of success in litigation, with consideration given to the uncertainty in fact and in law.</u>   Although Trustees believe that their claims against Malladi Reddy are meritorious, the state of Juliet Homes' records and the conflicting information from Malladi Reddy and M.J. Reddy regarding the payments made from Juliet Homes and amounts allegedly due make successful prosecution of the claims uncertain.

(b)     <u>Complexity, expense and likely duration of litigation.</u>   As set forth above, the Adversary Proceedings are complex, will be expensive to litigate with multiple defendants whose fact situations and legal issues could support stand-alone trials, and will likely not get reached for trial until 2015.

- 20 -

(c) <u>Other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.</u> Given the factual disputes about payments to Malladi Reddy and M.J. Reddy and the state of the Debtors' records on this critical issue, Trustees concluded that settlement was beneficial to the estates.

## 11. **Warren King**

45. Warren King is a lawyer who acted as counsel for Juliet Homes and related entities and who was a part owner of Pinnacle Title Company, which was the settlement agent in closing many of the Juliet Homes purchases and sales.

46. Trustees sued King to recover alleged transfers totaling $177,695, of which $1,925 was for legal fees and $117,159 for partnership distribution and $58,610 out of the Silverwood closing. King denied receiving the last two transfers and claimed that he had provided legal services and therefore value in exchange for the legal fees. Trustees also sued King for fraud, alleging that King was an insider of the Debtor's and therefore involved in the fraud scheme that resulted in the claims against the estates. After protracted negotiations, King agreed to pay $12,500 in settlement of the Trustees' claims. A copy of the settlement agreement with King is attached as **Exhibit 11**.

47. Factors under *Protective Committee For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968):

(a) <u>Probability of success in litigation, with consideration given to the uncertainty in fact and in law.</u> Trustees could not substantiate their claim that King received a cash distribution of $117,159 or that he controlled and owned the account into which $58,610 was paid from the Silverwood closing, so their probability of success on those claims was not good. Further, it appeared that King provided legal services that would support King's claims of value as to the

- 21 -

$1,925 paid to him.  On the fraud claim, proving King's involvement in the Debtors' fraud scheme and linking King to certain damages also presented challenges, although Trustees believe that the claim has merit.  King provided evidence, however, of his inability to pay any significant judgment against him.  Trustees concluded, therefore, that a settlement was in the best interests of the estates.

(b)     Complexity, expense and likely duration of litigation.  Proving a fraud case against King would take considerable time, effort and expense with the likelihood that a judgment, if granted, would not be collectable.

(c)     Other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.  Trustees have concluded that this settlement, which recovers $12,500 for the estates, is in the best interests of the estate and allows the Trustees to concentrate their efforts and resources on other Defendants and conserve resources.  Warren King is also releasing his proof of claim in the amount of $54,500.

**12.     Former Employees Joanna Gober, Edward and Ashley O'Hair, Carolee Taylor (and husband Eric Putnam), Melissa Thomas, Ray Lindgren, and Anthony Fitzpatrick**

48.     Trustees sued several former employees of Juliet Homes and their relatives to recover transfers allegedly made to them.  Those settling former employees and relatives and the alleged transfer amounts are listed in this chart:

| Employee name | Employee position | Alleged Transfer Amount | Basis for Transfer |
|---|---|---|---|
|  |  |  |  |
| Joanna Gober | bookkeeper | $26,000 | Rent payments on home titled in Gober's name |
| Edward  O'Hair | Salesman | $25,000 | Rent payments on home titled in O'Hair's name; repayment of loan |

- 22 -

| Ashley O'Hair | Wife of Edward O'Hair | $25,000 | Rent payments on home titled in O'Hair's name; repayment of loan |
| Carolee Taylor | TMOC employee | $25,000 | Rent payments on four homes titled in Taylor's name |
| Eric Putnam | Husband of Taylor | $25,000 | Payments on home titled in Putnam's name |
| Melissa Thomas | Referral source | $87,282 | Rent payments, commissions, closing costs |
| Ray Lindgren | CFO | $60,000 | Partnership distributions |
| Anthony Fitzpatrick | salesman | Unspecified | Unspecified |
| | | | |

49.     Defendants Gober, O'Hair, Taylor and Putnam were sued in Adversary Proceedings Nos. 09-03435, 09-03436, and 09-03437, known generally as the "Straw Buyer Adversaries."   In those adversary proceedings, Trustees sought to recover amounts paid to defendants who purchased and/or took title to properties owned by Juliet Homes and then leased them back to Juliet Homes or simply permitted Juliet Homes to make the mortgage payments for the Straw Buyer.  Defendants Gober, O'Hair, Taylor and Putnam defended Trustees' claims by asserting that their arrangements with Juliet Homes and Doug Brown required the Debtors to make all mortgage payments (whether in the form of rents or direct payments) and to pay all closing costs associated with the sales of the properties, most of which were used as model homes.

50.     All of the Straw Buyer defendants alleged a financial inability to pay any judgment if one were entered against them.   They provided affidavits of their financial conditions and/or other financial documentation to the Trustees in support of their positions.  All also pledged their cooperation in Trustees' presentation of evidence in the event the Trustees' case goes to trial.

- 23 -

51.     Defendant Anthony Fitzpatrick was a salesman who assisted Juliet Homes in pre-sales and sales of its homes.  Fitzpatrick may never have been served with a complaint, and it appears that he was only nominally a defendant in the Straw Buyer Adversary Proceedings with no damage allegations raised specifically against him.

52.     Defendant Ray Lindgren was the CFO for Juliet Homes.  Trustees sued him to recover $60,000 in "partnership distributions," but it appears that these payments were actually salary checks.

53.     Defendant Melissa Thomas is a lawyer who worked at Pinnacle Title to assist with Juliet Homes closings and who also worked in-house at Juliet Homes.  Thomas also acted as a referral source for Juliet Homes in exchange for the promise of a commission.  She also invested in one of the Juliet Homes projects with her former husband, Tullis Thomas, through their company TMCM.    Thomas also purchased a home that she leased back to Juliet Homes. Of the $87,282.59 in transfers alleged in Trustees' complaint, $54,782.59 of the transfers relate to Thomas' straw buyer purchase of 614 Westcott.  The balance of $32,500 was a payment made not to Thomas, but to a now defunct company previously owned by Thomas, TMCM.  Thomas claims that payments made to her in connection with the home she purchased were consistent with the arrangement she made with Juliet Homes for its use of the home and also "for value."

54.     Trustees have agreed to dismiss with prejudice their claims against each of the defendants listed above.  Copies of the settlement agreements are attached as **Exhibits 12 (Gober), 13 (O'Hairs), 14 (Taylor), 15 (Putnam), 16 (Thomas), 17 (Lindgren) and 18 (Fitzpatrick)**.[2]

---

[2] Trustees submit those settlement agreements that are not yet signed as being substantially in the form that Trustees expect the defendants to execute.

55.     Factors under *Protective Committee For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968):

(a)     <u>Probability of success in litigation, with consideration given to the uncertainty in fact and in law.</u>  Trustees have doubts about their ability to prevail on claims against the straw buyers whose leases and other documentation provide for Juliet Homes' payment of certain rents and closing costs in connection with the sale and re-sale of homes.  Upon information and belief, many of these employees were threatened with the loss of their jobs if they did not acquiesce in Doug Brown's demands to take title to the homes and obtain mortgages to do so.  Likewise, Trustees have doubts about the likelihood of success on their claims against Lindgren and Fitzpatrick for the reasons stated above.  Trustees concluded, therefore, that a dismissal of their claims was in the best interests of the estates.

(b)     <u>Complexity, expense and likely duration of litigation.</u>  Proving a fraudulent transfer case against the former employees would take considerable time, effort and expense with the likelihood that a judgment, if granted, would not be collectable as to several of the defendants.

(c)     <u>Other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.</u>  Trustees have concluded that these settlements, which result in the dismissal of the claims against the defendants, are in the interests of justice and fairness.  Trustees have obtained valuable information from these defendants in the course of discovery, and that information not only expanded Trustees' knowledge base about the inner workings of Juliet Homes but also supported the defenses asserted by these defendants.  Additionally, the settlements result in the defendants' releases of their counterclaims against the Trustees and of their proofs of claim against the Estates.  Defendant Gober is releasing two claims in the amount of $74,408 and

- 25 -

$10,000 as well as an administrative claim for services provided in preparing the bankruptcy schedules and statement of financial affairs.  Edward O'Hair is releasing a claim in the amount of $9,360.91.  Melisa Thomas is releasing her claim in the amount of $46,141.92.

## IV.  PRAYER

56.     For all the reasons set forth above, Trustees believe that the proposed settlement agreements are in the best interests of the estates and their creditors.   Trustees respectfully request that the Court grant this motion and enter an order approving the compromises.  Trustees respectfully request all other relief to which they are justly entitled.

Date: August 12, 2014                              Respectfully submitted,

_/s/ Susan H. Jacks_
Susan Hardie Jacks
Attorney-in-Charge
State Bar No. 08957600
S.D. Texas I.D. No. 4192
susanjacks@mehaffyweber.com
500 Dallas, Suite 1200
Houston, Texas 77002
Phone: (713) 655-1200
Fax: (713) 655-0222

ATTORNEYS FOR JOSEPH M. HILL, TRUSTEE
and JANET S. NORTHRUP, TRUSTEE

OF COUNSEL:
MEHAFFY WEBER, P.C.
Jeremy R. Stone
State Bar No. 24013577
S.D. Texas I.D. No. 27060
jeremystone@mehaffyweber.com
500 Dallas, Suite 1200
Houston, Texas 77002
Phone: (713) 655-1200
Fax: (713) 655-0222

- 26 -

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 12th day of August, 2014, a true and correct copy of this Motion was served by first class mail or ECF on (i) the United States Trustee, (ii) the IRS, (iii) the Chapter 7 Trustees, (iv) Debtors' counsel, (v) the 20 largest unsecured creditors of each Debtor, and (vi) all persons who filed notices of appearance, all of whom are identified on the attached list.  Notice of the filing of this motion was served on all creditors as set forth more fully in the Notice filed contemporaneously with this Motion.

*/s/ Susan H. Jacks*
Susan H. Jacks

**Debtors**

Douglas A. Brown
710 Bayshore, #101
Ft Lauderdale, FL 33304

Juliet Homes, LP
5225 Katy Freeway, Suite 605
Houston, Texas 77008

Juliet GP, LLC
720 Rusk St., 2nd Floor
Houston, TX 77002

**Debtors' Counsel**

J Craig Cowgill
J. Craig Cowgill & Associates, P.C.
8100 Washington, Suite 120
Houston, TX. 77007

**Chapter 7 Trustees**

Janet S Casciato-Northrup
Hughes Watters and Askanase
333 Clay, 29th Floor
Houston, TX 77002

Joseph M Hill
Cage Hill and Niehaus LLP
5851 San Felipe, Suite 950
Houston, TX 77057

**U.S. Trustee**

Hector Duran
U.S. Trustee
515 Rusk, Ste 3516
Houston, Texas 77002

Ellen Maresh Hickman
Office of the U S Trustee
515 Rusk St, Ste 3516
Houston, TX 77002

Nancy Lynne Holley
U S Trustee
515 Rusk St, Ste 3516
Houston, TX 77002

Diane G Livingstone
Office of U S Trustee
515 Rusk St, Ste 3516
Houston, TX 77002

**IRS**

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia Pa 19101-7346

- 27 -

**Parties Requesting Notice (All 3 Debtors)**

Ronald J. Sommers
Jennifer Lynn-Soon Haluptzok
Nathan Sommers Jacobs
2800 Post Oak Blvd., 61st Floor
Houston, Texas 77056

Steven A. Leyh
Leyh & Payne, LLP
1616 S. Voss Rd., Ste. 125
Houston, Texas 77056

Joshua Morris Harrison
Goodwin and Harrison
PO Box 8278
The Woodlands, Texas 77387-8278

Susan E. Cates
Joshua W. Wolfshohl
Porter & Hedges, LLP
1000 Main St., 36th Fl.
Houston, Texas 77002

Chuck I. Okoye
2833 Clinton Dr.
Houston, Texas 77020

Anthony Laurent LaPorte
Hanszen • LaPorte
PO Box 240353
4309 Yoakum St.
Houston, Texas 77277-9444

Steve Shurn
Hughes, Watters & Askanase, LLP
333 Clay St., 29th Floor
Houston, Texas 77002

James Landon
Hughes & Luce, LLP
111 Congress, #900
Austin, Texas 78701

Guy K. Cooksey
Matthews, Lawson & Bowick, PLLC
2000 Bering Dr., Ste. 700
Houston, Texas 77057

Harris County
c/o John P. Dillman
PO Box 3064
Houston, Texas 77253-3064

William S. Chesney, III
Frank, Elmore, Lievens, Chesney &
Turet, LLP
808 Travis St., Ste 2600
Houston, TX 77002

Montgomery County
c/o John P. Dillman
PO Box 3064
Houston, Texas 77253-3064

Melanie D. Bragg
Law & Mediation Offices
4801 Woodway, Suite 320W
Houston, Texas 77056

Q. Tate Williams
Attorney at Law
917 Franklin, Suite 240
Houston, Texas 77002

J. Daniel Woodall
Gauntt, Earl & Binney, LLP
1400 Woodloch Forest Dr., Ste. 575
The Woodlands, Texas 78730

Brian D. Womac
Womac & Assoc.
Two Memorial City Plaza
820 Gessner, Suite 1540
Houston, Texas 77024

Carl O. Sandin
Perdue, Brandon, Fielder, Collins
& Mott, LLP
1235 North Loop West, Ste. 600
Houston, Texas 77008

John Manicom
12591 Research, Ste. 101
Austin, Texas 78759

J Craig Cowgill
J. Craig Cowgill & Associates, P.C.
8100 Washington, Suite 120
Houston, TX. 77007

Bennett G Fisher
Fisher and Associates PC
909 Fannin St, Ste 1800
Houston, TX 77010

Blanche Duett Smith
McFall Breitbeil & Smith
1331 Lamar Street, Suite 1250
Houston, TX 77010-3027

Wayne Kitchens
Hughes Watters Askanase LLP
333 Clay St, 29 Fl
Houston, TX 77002

James D. Salyer
Morris, Lendais, Hollrah & Snowden
1980 Post Oak Boulevard, Suite 700
Houston, Texas 77056

Timothy A. Million
Munsch Hardt Kopf & Harr, PC
Bank of America Center
700 Louisiana, 46th Floor
Houston, TX 77002

Randall A. Rios
Munsch Hardt Kopf & Harr,
PC Bank of America Center
700 Louisiana, 46th Floor
Houston, TX 77002

Geoffrey H. Bracken
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5011

June A. Mann
Mann & Stevens, P.C.
550 Westcott Street, Suite 560
Houston, Texas 77007

Ben R. King
Ike Exezidis
King & Exezidis, Attorneys At Law
1631 Dunlavy
Houston, TX 77006

Pat B. Fossett, Esq.
614 Moray Place
Corpus Christi, TX 78411

R. Christopher Naylor
Kathryn L. Buza
Devlin, Naylor & Turbyfill, P.L.L.C.
4801 Woodway, Suite 420 West
Houston, Texas 77056-1805

David A. McDougald
Grosz & Associates, P.C.
440 Louisiana St. Ste 250
Houston, Texas 77002

Mary A. Daffin
Barrett Burke Wilson
Castle Daffin & Frappier, L.L.P.
1900 St. James Place, Suite 500
Houston, Texas 77056

John P Dillman
Linebarger Goggan Blaire & Sampson
1301 Travis Street, Suite 300
Houston, TX 77002

Internal Revenue Services
Centralized Insolvency Ops
1919 Smith St Stop 5022 HOU
Special Procedure
Houston TX 77002

Dominique M. Varner
Hughes Watters Askanase, L.L.P.
3 Allen Center, 29th Floor 333 Clay
Houston, TX 77002

G. James Landon
Hughes & Luce, LLP
111 Congress, Suite 900
Austin, Texas 78701

HHT - FCP Limited 4, LP
c/o Hanszen Laporte
4309 Yoakum Blvd.
Houston, TX 77006-5856

David Allen McDougald
Grosz & Associates
440 Louisiana Street, Suite 250
Houston, Texas 77002

Michael S. Margolf
Moss Codilis, L.L.P.
P.O. Box 77409
Ewing, NJ 08618

- 30 -

**20 Largest Unsecured Creditors
(Douglas A. Brown)**

5803 Richmond, Ltd.
c/o Jennifer L. Haluptzok
Nathan Sommers Jacobs
2800 Post Oak Blvd., 61st Floor
Houston, TX 77056

6409 Interests, Ltd. dba 802 Interests, Ltd.
c/o Jennifer L. Haluptzok
Nathan Sommers Jacobs
2800 Post Oak Blvd., 61st Floor
Houston, TX 77056

6353 Interests, Ltd.
c/o Jennifer L. Haluptzok
Nathan Sommers Jacobs
2800 Post Oak Blvd., 61st Floor
Houston, TX 77056

Karalynn Cromeens
1413 Brittmore Road
Houston TX 77043

Cenlar
Attn: Bankruptcy Department
P.O. Box 77409
Ewing, NJ 08618

HHT (1998) Limited
3010 Palmer Way
The Woodlands, Texas 77380

Timothy Delgado
Arnold & Itkin, LLP
1401 McKinney St., Ste 2550
Houston, TX 77010

Spectrum LLP
PO Box 3011
Spring, TX 77373-3011

Vincent Galeoto
8134 Sun Terrace Lane
Houston, TX 77095

Meinen Family Partnership
3227 Wild River Dr
Richmond TX 77469-8299

Raj Rangwani
3934 FM 1960 Rd W Ste 210
Houston TX 77068-3544

SER Construction Partners, Ltd.
c/o Meyer, Knight & Williams, L.L.P.
8100 Washington Avenue, Suite 1000
Houston, Texas 77007

LeAnn Kenney
3422 Creekstone
Sugar Land TX 77479-2418

Melisa Thomas
c/o Nichamoff & King, P.C.
6565 West Loop South, Suite 501
Bellaire, TX 77401

FCP (1998) Limited
126 Tranquil Park
The Woodlands, TX 77380

Thompson & Knight LLP
333 Clay Street, Suite 3300
Houston, TX 77002

Najmuddin Karimjee, M.D.
and SAIFI, L.L.C.
14511 Linscomb Drive
Houston, TX 77084

U.S. Bank N.A.
Bankruptcy Department
P.O. Box 5229
Cincinnati, OH 45201

Advanced Appliances
2101 N Main St
Pearland, TX 77581-3309

- 31 -

Chase Auto Finance
PO Box 901032
Ft. Worth, TX 76101-2032

**20 Largest Unsecured Creditors
(Juliet Homes, LP)**

5803 Richmond, Ltd.
c/o Jennifer L. Haluptzok
Nathan Sommers Jacobs
2800 Post Oak Blvd., 61st Floor
Houston, TX 77056

Almeda/Reed Interests, Ltd.
c/o Jennifer L. Haluptzok
Nathan Sommers Jacobs
2800 Post Oak Blvd., 61st Floor
Houston, TX 77056

6353 Interests, Ltd.
c/o Jennifer L. Haluptzok
Nathan Sommers Jacobs
2800 Post Oak Blvd., 61st Floor
Houston, TX 77056

TMCM Real Properties, LLC
(Tullis Thomas)
Tullis Thomas
3109 Nantucket Ct.
Pearland, TX 77584

Thu Binh Si Ho
ATTN: Tri Nguyen
9440 Bellaire Blvd, Suite 216
Houston, TX 77036

Bruce A Nickel
P.O. Box 396
Barker TX 77413

Michael Schnakenberg
15 Greenlaw Ct
Sugar Land TX 77479

FCP (1998) Limited
126 Tranquil Park
The Woodlands, Texas 77380

HHT (1998) Limited
3010 Palmer Way
Houston, TX 77380

Dave Perkins
c/o Marjorie Payne Britt
Britt & Catrett, PC
4615 S. W. Fwy., Suite 500
Houston, TX 77027

Najmuddin Karimjee, M.D. and SAIFI, LLC
14511 Linscomb Drive
Houston, TX 77084

Spectrum L.L.P
Po Box 3011
Spring, TX 77373

LH Ramming, Trustee
50 Briar Hollow Lane
Suite 210- East Bldg.
Houston, TX 77027

Arcoa Capital Partners
Larry Ramming, Trustee
50 Briar Hollow Lane
Suite 210- East Bldg.
Houston, TX 77027

Arcoa Funding LLC
50 Briarhollow Suite 210 East
Houston, TX 77027-9300

Thu-Binh Si Ho & Hue Phu Ho
1625 Kirby
Houston, TX 77019

Bruce A Nickel
P.O. Box 396
Barker TX 77413

- 32 -

Joon Rhee
5114 Lillian St.
Houston, TX 77007

Muduganti J. Reddy
c/o Warren King
5020 Montrose, Third Floor
Houston, TX 77006

Meinen Family Partnership
3227 Wild River
Richmond, TX 77469

Michael Schnakenberg
15 Greenlaw Court
Sugar Land, TX 77479

SER Construction Partners, Inc.
P.O. Box 891145
Houston, TX 77289

Suarez Construction Group, LLC
505 N. Sam Houston Pkwy E. #265
Houston, TX 77060

**20 Largest Unsecured Creditors
(Juliet GP, LLC)**

Almeda/Reed Interests, Ltd.
c/o Jennifer L. Haluptzok
2800 Post Oak Blvd., 61st Floor
Houston, TX 77056

6353 Interests, Ltd.
c/o Jennifer L. Haluptzok
Nathan Sommers Jacobs
2800 Post Oak Blvd., 61st Floor
Houston, TX 77056

HHT (1998) Limited
3010 Palmer Way
The Woodlands, Texas 77380

Najmuddin Karimjee, M.D. and SAIFI, LLC
14511 Linscomb Drive
Houston, TX 77084

Vincent Galeoto
8134 Sun Terrace Lane
Houston, TX 77095

FCP (1998) Limited
126 Tranquil Park
The Woodlands, Texas 77380

5803 Richmond LTD
c/o Andrew McCormick
5909 West Loop S Ste 550
Bellaire, TX 77401-2402

Dr. Cliff Atwood
3027 Poe Dr.
Montgomery, TX 7356-5543

Jeanette Kew
PO Box 525212
Flushing, NY 11352-5212

Flooring Services of Texas LP
c/o Susan E. Cates
1000 Main St. 36th FL
Houston, TX 77002-6336

Raj Rangwani
3934 FM 1960 Rd W Ste 210
Houston, TX 77068-3544

Robert Davis
c/o Raul Suazo
808 Travis St Ste 1800
Houston, TX 77002-5718

SER Construction Partners, Ltd.
c/o Nathan A. Steadman
8100 Washington Ave Ste 100
Houston, TX 77007-1062

Turnkey Concrete
2718 Colony Park Drive
Sugarland, TX 77479

- 33 -

Cornerstone Electric Company
1047 E. Hufsmith Rd.
Tomball, TX 77375

J & LA Plumbing Co.
6832 Lindbergh St.
Houston, TX 77087

First Horizon Construction Lending
Construction Loan Admin.
1250 Wood Branch Park Dr., Suite 600-CC
#7546
Houston, TX 77079

Entergy
PO Box 8104
Baton rouge, LA 70891-8104

Sutherland Asbill & Brennan, LLP
1275 Pennsylvania Ave., NW
Washington, DC 20004-2415

Texas Drywall
1505 Aldine Bender
Houston, TX 77032

HOULITIGATION:1381336.2